ALFORD, Judge.
This is an appeal from a partial summary judgment affirming the location and operation by the defendant, Wainoco Oil and Gas Company (Wainoco), of a unit well which is bottomed on unleased property belonging to the plaintiff, Adam G. Nunez, that is located within the unit. The court denied plaintiff’s motion for summary judgment to require removal of the well, released the Commissioner of Conservation as a defendant, allowed the remaining defendants to continue to operate the well in question, and limited plaintiff’s action against the other defendants to one for damages in the event that plaintiff proves that the location of the well constitutes a subsurface trespass. More specifically, on the latter ruling, the trial court held that the plaintiff could not have the trespass removed, even if bad faith trespass is proven.
FACTS
The plaintiff’s property was included in a compulsory undrilled unit formed by the Commissioner of Conservation after a pub- *1152 lie hearing. The plaintiff attended the public hearing and supported the creation of the unit. The geological information presented at the hearing and adopted by the Commissioner indicated that the optimum position of the unit well would be in the western portion of the unit which included the plaintiffs tract.
Wainoco applied for and received a permit from the Commissioner to drill a well within the unit. The surface location of the well in question is located on leased land within the unit; however, the well, which is producing from the unitized sand, is bottomed on the plaintiffs unleased property within the unit. Plaintiff participated in the drilling of the well as a working interest owner, advanced his share of the drilling costs and received revenues from production. The well, originally permitted as a lease well subject to Statewide Orders 29-B and 29-E and to Unit Order 1016-2, was designated as the unit well after it was determined to be capable of producing from the unitized sand. Some two and one-half years later, the well was confirmed as the unit well after a public hearing, at which the plaintiff appeared and opposed the confirmation alleging subsurface trespass.
Prior to confirmation of the well as the unit well, the plaintiff filed the instant suit to require Wainoco to remove the well, alleging subsurface trespass by Wainoco and other defendants. Wainoco answered claiming that since the well was designated as the unit well, no trespass was involved. The Commissioner of Conservation answered supporting his designation of the well as the unit well in order to comply with his statutory duty to conserve the natural resources of the state and to efficiently and economically develop oil and gas resources in the public interest. Both sides moved for summary judgments, and the trial court rejected the plaintiffs motion and granted partial summary judgment in favor of the defendants as noted above.[1]
DISCUSSION
The Commissioner of Conservation is under a duty to exercise the police power of the state in order to conserve the state’s mineral resources in the public interest. LSA-R.S. 30:1-30:63. In so doing, the commissioner must prevent waste and avoid the drilling of unnecessary wells by establishing a drilling unit comprised of the maximum area within a pool or reservoir which can be efficiently and economically drained by one well. LSA-R.S. 30:9. This unitization of separately owned tracts protects the correlative rights of each owner within the unit by allowing each to recover no more than his just and equitable share of production from the pool. LSA-R.S. 30:9.
In the instant case, while the plaintiff does not question the validity of the unit in which his property is located, he argues that the trial court erred in upholding the designation and confirmation of the well as the unit well. He contends that the designation of the location for the unit well does not comply with LSA-R.S. 30:9 C. When the commissioner unitizes an undrilled area, he must designate a unit well in the order creating the unit at a location that affords the most efficient and economic drainage of the unit and that insures that the producers obtain no more than their equitable share of the oil and gas in the pool. LSA-R.S. 30:9 C. For more than 25 years, the commissioner has designated the location of the unit well in his order creating the unit by reference to Statewide Order 29-E rather than attempting to pinpoint the exact surface location. This statewide order regulates the minimum spacing between wells and between wells and property lines. The property lines referred to by the order are defined as the unit boundaries when a unit is involved.
*1153 Under the doctrine of contemporaneous construction, settled administrative practice may serve as a fair index of legislative intent. Washington v. St. Charles Parish School Board, 288 So.2d 321 (La.1974). Although an interpretation of a law by another department of government does not control the judiciary, where officers charged with the enforcement of a law have determined its meaning and acted accordingly for a long period of time, their interpretation is entitled to great weight. State ex rel Payne v. Exchange Bank of Natchitoches, 147 La. 25, 84 So. 481 (1920). “That is because of a presumption that the public officers’ method of applying the law would not be tolerated until it had grown into a regular practice, if it were unauthorized.” 84 So. at 483.
Therefore, the construction of a statute by administrative officers will not be overruled unless clearly wrong or unless a different construction is plainly required. State v. Standard Oil Co. of Louisiana, 190 La. 338, 182 So. 531 (La.1938). Moreover, the general principle governing judicial review of administrative decisions is that, if the evidence as reasonably interpreted supports the determination of the administrative agency, its orders will not be reversed or modified in the absence of a clear showing that the administrative action is arbitrary and capricious. LSA-R.S. 49:964, Subd. G(5, 6). Summers v. Sutton, 428 So.2d 1121 (La.App. 1st Cir.1983).
In the instant case, the commissioner designated the location of the unit well in the order creating the unit (Order 1016-B-2) by reference to Statewide Order No. 29-E after a full public hearing and an examination of the geological evidence. This procedure has been the standard practice for more than 25 years. We can find no clear error in the commissioner’s use of the statewide order to designate a general optimum location rather than pinpointing the exact surface location. Furthermore, the statewide order contains a procedure to be used by the commissioner for altering the location of the well if the 29-E spacing does not provide an optimum location in accordance with LSA-R.S. 30:9 C. Waino-co’s selected location complied with the minimum spacing requirements of 29-E in regard to unit boundaries.
Plaintiff also complains about the amendment of the permit to show the well to be the unit well. The permit to drill issued by the commissioner required that the well be drilled in accordance with Statewide Order 29-B, as well as 29-E and the unit order for that particular sand. During the drilling of the well, Wainoco provided an inclination survey in order to show compliance with 29-B. This order allows a deviation of five (5) degrees from the vertical while drilling a straight hole into the ground. As long as the well is bottomed within five (5) degrees of the surface location, and the surface location is at least 330 feet from a property line, it is considered a straight hole and need not meet directional drilling requirements. The survey showed a deviation from the vertical of approximately one degree (about 162 feet and 11,-444 feet subsurface), well within the five (5) degrees allowable. The well bottomed within the unit in the unitized sand, and it was determined that the well bore did not cross any property line, i.e., unit boundary line, since the well met the 330 foot minimum spacing requirement as to unit boundaries. Thus, from the evidence as reasonably interpreted by the commissioner, the well drilled by Wainoco met the required conditions and his action in designating the well as the unit well was not clearly arbitrary or capricious.
The plaintiff alleges that the commissioner acted arbitrarily and capriciously in confirming the well as the unit well in June of 1982, some two and one-half years after its designation as the unit well. The well was producing from the unitized sand, and the geological information provided at the June 8, 1982, public hearing as to optimum location of the unit well was not disputed by the plaintiff. After evaluating the exhibits and testimony, the commissioner issued Order No. 1095-B and 1016-B-3 which confirmed the unit created previously and continued Wainoco’s well as the unit *1154 well serving as the reasonable and appropriate means to conserve the natural resources of the state, to prevent waste and to avoid the drilling of unnecessary wells. We are unable to find any clear showing that the commissioner’s actions were arbitrary and capricious. This being the case, there is no reason the commissioner should remain in this suit.
This, however, does not end the inquiry. It is true, as we have said, that the commissioner was within his authority to issue the unitization order and to designate a unit well thereon, but the trial court granted a partial summary judgment to the defendants limiting plaintiff’s remedy, in the event he proves a trespass, to damages, reasoning that the commissioner authorized the position of the well under the administrative powers given him by the state. In effect, the trial court said plaintiff is powerless to have any part of the well removed — even that portion which encroaches on his property. We find this reasoning flawed.
The commissioner must give due regard to individual and property rights; however, these rights must yield to a proper exercise of the police power. See Delatte v. Woods, 232 La. 341, 94 So.2d 281 (1957). The commissioner carries out the valid statutory mandate by issuing forced pooling unitization orders establishing drilling units after public hearings are held. LSA-R.S. 30:9; 30:10. The forced pooling converts various separate interests into a common interest as far as development of a unit and the drilling of the unit well are concerned. Mire v. Hawkins, 249 La. 278, 186 So.2d 591 (1966). Under forced pooling, owners of tracts within the drilling unit must pool their interests for the purpose of development, and a well drilled on any tract within the unit is considered as having been drilled upon each separate owner’s tract. LSA-R.S. 30:10. Individual tract owners thus lose the right to search independently for oil and gas under their land. Such forced pooling has been deemed to be a constitutionally valid exercise of the state’s police power. Alexander v. Holt, 116 So.2d 532 (La.App. 2d Cir.1959).
Nowhere in the legislature’s grant of authority to the commissioner is there an express provision allowing him to authorize drilling on or under unleased property without the authorization or consent of the landowner.
It is basic to Louisiana law that an owner of land may use, enjoy and dispose of that land and its fruits, including everything directly above or under it, restrained only by explicit and specific laws and rights of others. La.Civ.Code arts. 477, 483, 490. The right to permit entry on land to explore for oil, gas or other minerals is a valuable property right belonging exclusively to the landowner. Picou v. Fohs Oil Co., 222 La. 1068, 64 So.2d 434 (1953); Franklin v. Arkansas Fuel Oil Co., 218 La. 987, 51 So.2d 600 (1951); Angelloz v. Humble Oil and Refining Co., 196 La. 604, 199 So. 656 (1941). A landowner states a cause of action when he claims a subsurface trespass by a party whose well is bottomed on the plaintiff’s property. Gliptis v. Fifteen Oil Co., 204 La. 896, 16 So.2d 471 (1944). See also, LSA-R.S. 31:12, 14.
In the case before us, the commissioner included plaintiff’s property in the drilling unit. This was within his powers. He authorized a five degree deviation from the vertical in drilling downward. This, too, was within his powers. The commissioner’s order did not authorize and could not authorize anyone to drill on or under unleased land where there was no permission from the owner of the unleased land. The order lacked that authorization because the commissioner lacked the power to give that authorization. His power to infringe on the property rights of landowners is restricted to those things specifically authorized by Louisiana law. Authorizing oil exploration on land without the landowner’s permission is not a power specifically given in the statutes.
If a well is drilled within the commissioner’s specifications, as this one ap *1155 pears to have been, it remains an approved unit well. If in drilling this well, the unit operator enters onto or drills under property in or out of the unit without permission from the owner of the land, the operator has committed a trespass.[2] If in bad faith, the trespasser is bound to remove the encroachment and pay damages. Esnard v. Cangelosi, 200 La. 703, 8 So.2d 673 (1942); Barker v. Houssiere-Latreille Oil Co., 160 La. 52, 106 So. 672 (1925); Bushnell v. Artis, 445 So.2d 152 (La.App. 3d Cir.1984).
The trial court will have to determine factually whether or not a trespass took place, and if there was a trespass, whether such was in good or bad faith. It was clearly error for the trial court to rule as a matter of law that the plaintiff can not seek to have the encroachment removed if he proves the necessary elements for such relief. That relief is not precluded in this case by the order of the Commissioner of Conservation regarding the unit and unit well location and specifications. Consequently, the ruling of the trial court granting a partial summary judgment to defendants, precluding the removal of the well insofar as it encroaches on plaintiff’s property, is reversed. However, we find no error in the trial judge allowing the well to continue in operation until this matter is finally resolved.
For the foregoing reasons, we remand this case to the trial court for resolution of the remaining issues. Costs of this appeal are assessed against all appellees, with the exception of the Commissioner of Conservation.
AFFIRMED IN PART, REVERSED IN PART, REMANDED.

. Plaintiff moved for summary judgment that defendants trespassed on his property, for an order directing them to remove the trespass, and for an injunction enjoining them from remaining on the property. The trial judge denied this motion and plaintiff appealed. Under LSA-C.C.P. art. 968, plaintiff can not appeal the denial of a motion for summary judgment. We, therefore will not entertain this part of his appeal.

. Obviously, if the landowner has conveyed the right to explore or drill to another, it would be necessary to obtain permission to explore or drill from that person.